1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                    EASTERN DISTRICT OF CALIFORNIA

8

9  SIMON GILL and WILLIAM HATCHER, )      NEW CASE NUMBER:
                                    )      <u>1:05-cv-00272 OWW LJO</u>
10                Plaintiffs,       )
                                    )      SCHEDULING CONFERENCE ORDER
11      v.                          )      AND ORDER CONSOLIDATING
                                    )      ACTIONS
12 CHEVRON TEXACO CORPORATION, a    )
   Delaware corporation, TEXACO,    )      Briefs re Discovery Due:
13 INC., a Delaware corporation,    )      7/22/05
                                    )
14                Defendants.       )      Opposition Due: 8/5/05
                                    )
15 _____    )      Reply Due: 8/12/05

16                                         Hearing re Discovery:
                                           8/26/05 8:30 Ctrm. 6
17
                                           Settlement Conference Date:
18                                         10/13/05 9:00 Ctrm. 6

19                                         Discovery Cut-Off: 5/16/06

20                                         Cross-Motions for Summary
                                           Judgment Due: 5/30/06
21
                                           Opposition Due: 6/19/06
22
                                           Reply Due: 7/3/06
23
                                           Hearing on Cross-Motions
24                                         for SJ: 7/17/06 9:00 Ctrm.
                                           2
25

26

27

28

                                    1

I.    Date of Scheduling Conference.

       June 23, 2005.

II.   Appearances Of Counsel.

       Alexander & Associates, PLC by William L. Alexander, Esq.,
appeared on behalf of Plaintiffs Simon Gill and William Hatcher.

       Pillsbury Winthrop Shaw Pittman LLP by Dawn M. Bradberry,
Esq., appeared on behalf of Defendants and Counter-Claimants
Chevron Texaco Corporation and Texaco, Inc.

III.  Summary of Pleadings.

       <u>Plaintiffs' Summary</u>

       1.    Plaintiffs Simon Gill and William Hatcher were oil
field engineers originally employed by Defendant Chevron Texaco
Corporation's ("CT"), predecessor in interest, Texaco, Inc.,
since about 1980 and 1984, respectively.  After the Chevron-
Texaco merger, Mr. Gill and Mr. Hatcher continued to work for the
new entity, CT, in rotational overseas assignments.  During
periods of 2002 and 2003, Plaintiffs were employed by CT as
managers for its Kazakhstan operations.  Because of their many
years of employment with Texaco, Plaintiffs were entitled to
benefits vested under Texaco's "Separate Pay Plan" ("SPP"), which
is CT's denomination for the "Summary Plan Description" ("SPD")
and Employee Welfare Benefit Plan ("EWBF"), terms defined and
regulated by the Employee Retirement Income Security Act, set out
at 29 U.S.C. §§ 1001, et seq. ("ERISA").

       2.    Texaco's SPP expressly provided enhanced benefits for
participating employees, such as Plaintiffs, in the event of a
"Change of Control" (hereinafter "COC").  Texaco's merger with
Chevron Corp., qualified as a COC and made Plaintiff eligible for

                              2

1   all enhanced benefits provisions of the SPP.  In addition, CT was
2   bound to continue Texaco's benefits to Plaintiffs regarding such
3   matters as vacation pay, tax treatment, premium pay, etc.

4       3.   In or about the summer of 2003, the Defendants advised
5   Plaintiffs that the Kazakhstan oil field project where they were
6   employed was being sold; that their employment would be
7   terminated as of September 30, 2003; and that Plaintiffs had to
8   make prompt decisions regarding options for benefits allowable
9   under the current EWBP.  Plaintiffs inquired as to the options
10  available to them and specifically requested a payout estimate
11  under the COC provisions binding on the parties.  As a result of
12  an exchange of writings between Plaintiffs and the Defendants'
13  agents, managers, and representatives, Plaintiffs were promised,
14  repeatedly that their separate benefits would exceed the sum of
15  $365,000 for Mr. Gill and $231,000 for Mr. Hatcher; that no
16  income taxes or similar deductions (such as Medicare) would be
17  taken from that sum inasmuch as Mr. Gill was not a United States
18  citizen (and was not obligated to pay taxes to other nations
19  which had granted him citizenship); and that all additional
20  benefits, such as vacation pay and premium pay would be properly
21  adjusted and credited to Mr. Gill.

22      4.   Notwithstanding double confirmation of these
23  representations, Mr. Gill's received benefits, which were at
24  least $100,000 less than the promised sums, and the Defendants
25  had improperly withheld taxes and other amounts from the same.
26  Mr. Gill contends that all named parties are proper parties to
27  this action who are directly or vicariously liable for the active
28  misrepresentations made to him, upon which he reasonably relied.

5.   Notwithstanding confirmation of these representations, Mr. Hatcher received benefits which were less than the promised sum.  Mr. Gill and Mr. Hatcher now seek declaratory relief, and money damages, both of which will require an accounting of all monies due them under the Defendants' ERISA plan.  Mr. Gill's and Mr. Hatcher's cases are predicated upon the denial of benefits provisions of ERISA (1132(a)(1)(B)) and the "estoppel and misrepresentation" federal common law recognized in the Ninth Circuit.  Mr. Gill's and Mr. Hatcher's claims are both *procedural* and *substantive* in nature.  It is not yet known if additional bases or theories of recovery will be discovered as this case progresses.

6.   Many documents and witnesses supportive of Mr. Gill's and Mr. Hatcher's claims were within the actual control of the Defendants.  While it is believed that many former employees who had first hand knowledge of matters relating to Mr. Gill's and Mr. Hatcher's claims have been terminated from the Defendants' employ, the Defendants are largely the only parties in possession of such witnesses' last known addresses or other contact information.

### The Company's Summary re Simon Gill

1.   Plaintiff Simon Gill was hired by Texaco, Inc., on April 23, 1980. On or around October 9, 2001, Texaco, Inc., became a subsidiary within the Chevron Corporation controlled group.  Plaintiff was awarded a residential assignment as General Manager of Operations for the Company's North Buzachi operation in Aktau, Kazakhstan from January 16, 2003, through October 8, 2003, when his employment terminated due to the sale of the North

1    Buzachi operation.

2         2.   As an expatriate on international assignment, Plaintiff

3    received an International Service Premium ("ISP") each pay period

4    in addition to his base pay and other financial incentives not at

5    issue here.  He was subject to the Company's expatriate tax

6    equalization policies.  These policies were adopted to ensure

7    that the decision to accept an expatriate assignment was tax-

8    neutral.  Thus, under the tax equalization policies, expatriate

9    employees should shoulder the same tax burden while working

10   abroad that they would have if they remained in their home

11   country.  Pursuant to these policies, the Company paid taxes owed

12   by expatriate employees to their international host countries and

13   some or all of the taxes owed by expatriates to their home

14   countries.  In turn, the Company withheld from expatriate

15   employees' pay a theoretical or hypothetical home country tax

16   based on the taxes the employees would have been obligated to pay

17   had they worked in their home country.  After each calendar year

18   of the international assignment, a "tax equalization calculation"

19   was performed.  The tax equalization compared: (a) the expatriate

20   employee's theoretical or hypothetical taxes actually withheld,

21   and (b) the expatriate employee's actual home country tax

22   expenditures, against (c) the tax liability that the expatriate

23   employee would have borne had he or she remained in the home

24   country.  As a result of the tax equalization, an expatriate

25   employee might owe money to the Company (if theoretical or

26   hypothetical taxes had been under-withheld), or the Company might

27   owe money to the expatriate employee (if theoretical or

28   hypothetical taxes were over-withheld).  Plaintiff failed to

1  request tax equalizations during the last several years of his
2  employment.

3      3.    Plaintiff also participated in the Separate Pay Plan of
4  Texaco, Inc.   The SPP is an unfunded employee welfare benefit
5  plan subject to the Employee Retirement Income Security Act of
6  1974, as amended.   Because Plaintiff was terminated within two
7  years of the Chevron/Texaco merger, which constituted a "Change
8  of Control" as defined in the SPP, he received Change of Control
9  Benefits in the amount of $365,953.79, less applicable
10  withholding.   Plaintiff's Change of Control benefits consisted of
11  a Base Pay Benefit, a Bonus & Overtime Benefit, and a Benefit
12  Plan Make-Up Payment.

13      4.    Pursuant to the SPP, Change of Control Benefits are
14  administered by the Change of Control Committee which has "final
15  discretionary authority to interpret the plan's provisions" and
16  "discretionary authority to make a final and conclusive
17  determination" as to claims for benefits.   Plaintiff submitted a
18  claim for additional Change of Control Benefits, asserting that
19  his Bonus & Overtime Benefit should have been calculated as a
20  multiple of his ISP.   On January 9, 2004, Plaintiff's claim was
21  denied, which denial was upheld by the Change of Control
22  Committee upon Plaintiff's administrative appeal.

23      5.    In this lawsuit, Plaintiff seeks additional Change of
24  Control Benefits under the SPP pursuant to ERISA, 29 U.S.C.
25  § 1132(a)(1)(B).   He alleges that his Bonus & Overtime Benefit
26  should have been calculated based upon his ISP.   He also seeks
27  the return of all theoretical taxes withheld from his salary and
28  his Change of Control Benefits pursuant to the Company's tax

1   equalization policies, via a claim for declaratory judgment.  He
2   alleges that, as a citizen of Canada, the United Kingdom, and
3   Trinidad, he is not obligated to pay any income tax to any taxing
4   authority.  In addition, Plaintiff seeks compensatory,
5   incidental, and/or consequential damages, declaratory relief,
6   attorneys' fees, and costs.  Plaintiff also demands a jury trial
7   on both claims.

8       6.   The Company maintains that Plaintiff is not entitled to
9   any additional benefits under the SPP or other relief under the
10  Company's tax equalization policies.  The Company seeks an award
11  of its attorneys' fees.  The Company further maintains that it is
12  not a proper defendant with respect to Plaintiff's ERISA claim
13  and that Plaintiff is not entitled to a jury trial as a matter of
14  law.

15      7.   In the Counter-Claim, the Company seeks the return of
16  any funds owed by Plaintiff after tax equalizations are
17  performed.

18      <u>The Company's Summary as to William Hatcher</u>

19      1.   Plaintiff William Hatcher was hired by Texaco, Inc., on
20  May 26, 1984.  On or around October 9, 2001, Texaco, Inc., became
21  a subsidiary within the Chevron Corporation controlled group.
22  Plaintiff was employed by the Company in Bakersfield, California,
23  until June 16, 2002, when he was awarded a rotational assignment
24  as a Field Production Engineer at the Company's North Buzachi
25  operation in Aktau, Kazakhstan.  As an expatriate on
26  international assignment, Plaintiff received an International
27  Service Premium ("ISP") each pay period in addition to his base
28  pay and other financial incentives not at issue here.  Plaintiff

                              7

1  remained on expatriate assignment until October 9, 2003, when his

2  employment terminated due to the sale of the North Buzachi

3  operation.

4      2.   Plaintiff participated in the Separation Pay Plan of

5  Texaco, Inc.  The SPP is an unfunded employee welfare benefit

6  plan subject to the Employee Retirement Income Security Act of

7  1974, as amended.  Because Plaintiff was terminated within two

8  years of the Chevron/Texaco merger, which constituted a "Change

9  of Control" as defined in the SPP, he received Change of Control

10 Benefits in the amount of $231,778.57, less applicable

11 withholding.  Plaintiff's Change of Control benefits consisted of

12 a Base Pay Benefit, a Bonus & Overtime Benefit, and a Benefit

13 Plan Make-Up Payment.

14     3.   Pursuant to the SPP, Change of Control Benefits are

15 administered by the Change of Control Committee which has "final

16 discretionary authority to interpret the plan's provisions" and

17 "discretionary authority to make a final and conclusive

18 determination" as to claims for benefits.  Plaintiff submitted a

19 claim for additional Change of Control Benefits, asserting that

20 his Bonus & Overtime Benefit should have been calculated as a

21 multiple of his ISP.  On January 9, 2004, Plaintiff's claim was

22 denied, which denial was upheld by the Change of Control

23 Committee upon Plaintiff's administrative appeal.

24     4.   In this lawsuit, Plaintiff seeks additional Change of

25 Control Benefits under the SPP pursuant to ERISA, 29 U.S.C.

26 § 1132(a)(1)(B).  He alleges that his Bonus & Overtime Benefit

27 should have been calculated based upon his ISP.  In addition,

28 Plaintiff seeks compensatory, incidental, and/or consequential

**8**

1  damages, attorneys' fees, and costs.  Plaintiff also demands a
2  jury trial.

3      5.   The Company maintains that Plaintiff is not entitled to
4  any additional benefits under the SPP.  The Company further
5  maintains that it is not a proper defendant and that Plaintiff is
6  not entitled to a jury trial as a matter of law.

7  IV.   Orders Re Amendments To Pleadings.

8      **As to Mr. Gill**

9      1.   The Company contends that Plaintiff failed to name
10 proper Defendants under ERISA by failing to name the Plan or Plan
11 Administrator.  Plaintiff reserves the right to amend the
12 Complaint to name the Plan or Plan Administrator.

13     2.   Mr. Gill also contends that discovery may reveal new
14 facts, or changes in the law warranting amendment.  If Mr. Gill's
15 discovery or research reveals a need to amend any pleading, he
16 will promptly seek a stipulation allowing for the amendment or he
17 will file a motion for leave to amend if a stipulation is not
18 possible.

19     3.   After obtaining the necessary information from
20 Plaintiff in discovery, the Company expects to have tax
21 equalizations conducted for those years in which Plaintiff did
22 not request them.  The Company may seek to amend the Counter-
23 Claim to reflect the results of those tax equalizations.

24     **As to Mr. Hatcher**

25     1.   The Company contends that Plaintiff failed to name
26 proper Defendants under ERISA by failing to name the Plan or Plan
27 Administrator.  Plaintiff reserves the right to amend the
28 Complaint to name the Plan or Plan Administrator.

1    **2.   Mr. Hatcher also contends that discovery may reveal new**
2    **facts, or changes in the law warranting amendment.  If Mr.**
3    **Hatcher's discovery or research reveals a need to amend any**
4    **pleading, then he will promptly seek a stipulation allowing for**
5    **the amendment or he will file a motion for leave to amend if a**
6    **stipulation is not possible.**

7    **V.   Factual Summary.**

8    **A.   Admitted Facts Which Are Deemed Proven Without Further**
9    **Proceedings.**

10           **Uncontested Facts As to Mr. Gill**

11           **1.   Plaintiff was a participant in the SPP of Texaco,**
12   **Inc.**

13           **2.   Texaco's merger with Chevron constituted a "Change**
14   **of Control" as defined by the SPP.**

15           **3.   Mr. Gill was entitled to, and received, some**
16   **severance benefits as a result of the COC and Mr. Gill's**
17   **termination of employment.**

18           **4.   Plaintiff submitted a claim for additional Change**
19   **of Control Benefits, dated December 9, 2003.**

20           **5.   By letter dated January 9, 2004, the Claims**
21   **Committee denied Plaintiff's claim.**

22           **6.   By letter dated March 8, 2004, Plaintiff appealed**
23   **the Claims Committee's decision to the Change of Control**
24   **Committee.**

25           **7.   The Change of Control Committee denied Plaintiff's**
26   **appeal by letter dated May 6, 2004.**

27           **8.   Plaintiff did not obtain a tax equalization for**
28   **the years 2001, 2002, or 2003.**

<u>Uncontested Facts As to Mr. Hatcher</u>

1.    Plaintiff was a participant in the SPP of Texaco, Inc.

2.    Texaco's merger with Chevron constituted a "Change of Control" ("COC") as defined by the SPP.

3.    Mr. Hatcher received severance benefits as a result of the COC and Mr. Hatcher's termination of employment.

4.    Plaintiff submitted a claim for additional Change of Control Benefits, dated December 9, 2003.

5.    By letter dated January 9, 2004, the Claims Committee denied Plaintiff's claim.

6.    By letter dated March 8, 2004, Plaintiff appealed the Claims Committee's decision to the Change of Control Committee.

7.    The Change of Control Committee denied Plaintiff's appeal by letter dated May 5, 2004.

<u>Contested Facts of Mr. Gill</u>

1.    Whether special premium rates which were part of Mr. Gill's compensation scheme with the Defendants were part of a special fund or otherwise came within the scope of ERISA.

2.    Whether the Defendants properly continued their historic treatment of Mr. Gill's compensation package through the date of his termination and in accordance with ERISA requirements.

3.    Whether the Defendants complied with their own procedural requirements in connection with their payments to Mr. Gill at the time of and after his separation.

4.    Whether the Defendants complied with the promises

1  made by their agents and representatives in connection with Mr.

2  Gill's separation.

3          5.    Whether facts developed during discovery can

4  support a fraud claim recognizable under ERISA.

5          6.    Whether the Defendants were guilty of procedural

6  defects in the handling of Mr. Gill's SPP payments such that

7  applicable ERISA requirements have not been met.

8          7.    Whether the Defendants' historical treatment of

9  Mr. Gill, with respect to tax withholdings and related matters,

10  was consistently followed at all times.

11          8.    Whether the Defendants had or have any right to

12  withhold taxes, or similar deductions, from Mr. Gill in view of

13  (a) the absence of any duty on his part to pay any taxes,

14  Medicare deductions, or other withholdings to the U.S. and (b)

15  his multinational citizenship, lack of taxation requirements, and

16  his historic tax treatment from all such nations.

17          9.    Whether Plaintiff reasonably expected, and was

18  entitled to, assistance in all tax matters from the defendants

19  for the years 2001, 2002, and 2003.

20                  **Contested Facts of the Company**

21          1.    The Company maintains that there are no contested

22  facts material to Plaintiff's claim for additional Change of

23  Control benefits under ERISA.  The Company contends that the

24  "contested" facts identified by Plaintiff above are either

25  immaterial or are actually disputed legal, rather than factual,

26  issues.

27                  **Contested Facts of Mr. Hatcher**

28          1.    Whether special premium rates which were part of

                                   12

1   Mr. Hatcher's compensation scheme with the Defendants were part

2   of a special fund or otherwise came within the scope of ERISA.

3       2.   Whether the Defendants properly continued their

4   historic treatment of Mr. Hatcher's compensation package through

5   the date of his termination and in accordance with ERISA

6   requirements.

7       3.   Whether the Defendants complied with their own

8   procedural requirements in connection with their payments to Mr.

9   Hatcher at the time of and after his separation.

10      4.   Whether the Defendants complied with the promises

11  made by their agents and representatives in connection with Mr.

12  Hatcher's separation.

13      5.   Whether facts developed during discovery can

14  support a fraud claim recognizable under ERISA.

15          Contested Facts of the Company

16      1.   The Company maintains that there are no contested

17  facts material to Plaintiff's claim for additional Change of

18  Control benefits under ERISA.  The Company contends that the

19  "contested" facts identified by Plaintiff above are either

20  immaterial or are actually disputed legal, rather than factual,

21  issues.

22  VI.  Legal Issues.

23      A.   Uncontested.

24          1.   Jurisdiction exists under 28 U.S.C. § 1332.

25          2.   Venue is proper under 28 U.S.C. § 1391.

26          3.   As to supplemental claims, the parties agree that

27  the substantive law of the State of California provides the rule

28  of decision.

1      **B.    Contested.**

2            **As to Mr. Gill**

3            **1.    Whether the Company is a proper Defendant under

4      ERISA.**

5            **2.    Whether Plaintiff is entitled to a jury trial

6      under ERISA.**

7            **3.    Whether Plaintiff may state a claim for estoppel

8      and misrepresentation herein.**

9            **4.    Whether there have been any procedural violations

10     of ERISA.**

11           **5.    Whether this Court should award Mr. Gill money

12     damages or remand the Defendants' decisions for correction so as

13     to comply with all relevant ERISA requirements.**

14           **6.    Whether the Court's review of the Change of

15     Control Committee's decision to deny Plaintiff's claim for

16     additional benefits under the SPP should be limited to the

17     administrative record that was before the Change of Control

18     Committee when it administered the claim.**

19           **7.    Whether discovery is appropriate on Plaintiff's

20     ERISA claim.**

21           **8.    The standard of review applicable to the Change of

22     Control Committee's decision to deny Plaintiff's claim for

23     benefits.**

24           **9.    The standard of review to be applied to

25     Plaintiff's claim of estoppel and misrepresentation.**

26           **10.   Whether the Change of Control Committee abused its

27     discretion in denying Plaintiff's claim for additional benefits

28     under the SPP.**

                                    **14**

1          **11.   Whether Plaintiff's demand for attorneys' fees is**

2  **permissible.**

3          **12.   Whether the presumption favoring Plaintiff**

4  **participants and beneficiary attorney fee claims, including**

5  **interim attorneys fees, should be applied here.**

6          **13.   Whether the Company's tax equalization policies**

7  **apply to Plaintiff's payout under the SPP.**

8          **14.   Whether it was improper for the Company to**

9  **withhold hypothetical or theoretical home country tax from**

10  **Plaintiff's pay pursuant to its expatriate tax equalization**

11  **policies.**

12          **15.   Whether the Defendants improperly withheld any**

13  **other amounts, such as Medicare, from Plaintiff in connection**

14  **with his ERISA benefits.**

15          **As to William Hatcher**

16          **1.   Whether the Change of Control Committee's decision**

17  **to deny Plaintiff's claim for additional benefits under the SPP**

18  **should be reviewed for abuse of discretion.**

19          **2.   Whether the Company is a proper Defendant under**

20  **ERISA.**

21          **3.   Whether Plaintiff is entitled to a jury trial**

22  **under ERISA.**

23          **4.   Whether the Court's review of the Change of Control**

24  **Committee's decision to deny Plaintiff's claim for additional**

25  **benefits under the SPP should be limited to the administrative**

26  **record that was before the Change of Control Committee when it**

27  **administered the claim.**

28          **5.   Whether discovery is appropriate on Plaintiff's**

1   ERISA claim.

2          6.    Whether the Change of Control Committee abused its
3   discretion in denying Plaintiff's claim for additional benefits
4   under the SPP.

5          7.    Whether Plaintiff's demand for attorneys' fees
6   should be dismissed because Plaintiff's claim was frivolous.

7          8.    Whether Plaintiff may state a claim for estoppel
8   and misrepresentation.

9          9.    Whether there were any procedural violations of
10  ERISA.

11         10.   Whether this Court should award Mr. Hatcher money
12  damages or remand the defendants' decisions for correction so as
13  to comply with all relevant ERISA requirements.

14         11.   The standard of review for the Change of Control
15  Committee's decision to deny Plaintiff's claim for proper ERISA
16  benefits.

17         12.   The standard of review to be applied to
18  Plaintiff's claim of estoppel and misrepresentation.

19         13.   Whether Plaintiff's demand for attorneys' fees is
20  permissible.

21         14.   Whether the presumption favoring Plaintiff
22  participants and beneficiary attorney fee claims, including
23  interim attorneys' fees, should be applied here.

24  VII. Consolidation.

25        1.    The parties agree that subject to the resolution of any
26  unrelated issues, these cases shall be consolidated for all
27  purposes, including trial, under the low case number: 1:05-cv-
28  00272 OWW LJO.  All further filings in these consolidated cases

1  shall be made under that number and the second case number, 1:05-
2  cv-00273 OWW SMS, shall be administratively closed.
3  VIII.   Consent to Magistrate Judge Jurisdiction.

4       1.   The parties have not consented to transfer the
5  case to the Magistrate Judge for all purposes, including trial.
6  IX.   Corporate Identification Statement.

7       1.   Any nongovernmental corporate party to any action in
8  this court shall file a statement identifying all its parent
9  corporations and listing any entity that owns 10% or more of the
10  party's equity securities.  A party shall file the statement with
11  its initial pleading filed in this court and shall supplement the
12  statement within a reasonable time of any change in the
13  information.

14  X.   Discovery Plan and Cut-Off Date.

15       1.   The parties disagree whether the case should be
16  resolved on the administrative record.

17       2.   The parties do not agree as to extent of discovery, if
18  any, that is permitted in respect to the ERISA claim.  The
19  parties agree that discovery is permitted as to the tax
20  equalization claim.  Accordingly, the following schedule shall be
21  adopted to resolve the issue of entitlement to discovery on the
22  ERISA claim.

23       3.   The Defendants shall file any legal authorities in
24  opposition to the right to conduct ERISA discovery in this case
25  on or before July 22, 2005.  The response of Plaintiffs shall be
26  filed on or before August 5, 2005.  Defendants' reply shall be
27  due on or before August 12, 2005.  The matter shall be heard
28  before Magistrate Judge O'Neill in Courtroom 6 on August 26,

17

1  2005, at 8:30 a.m.

2      4.   The parties are ordered to complete all discovery on
3  or before May 16, 2006.

4      5.   The parties are directed to disclose all expert
5  witnesses, in writing, on or before March 13, 2006.  Any
6  supplemental expert disclosures will be made on or before April
7  17, 2006.  The parties will comply with the provisions of Federal
8  Rule of Civil Procedure 26(b)(4) regarding their expert
9  designations.  Local Rule 16-240(a) notwithstanding, the written
10  designation of experts shall be made pursuant to F. R. Civ. P.
11  Rule 26(a)(2), (A) and (B) and shall include all information
12  required thereunder.  Failure to designate experts in compliance
13  with this order may result in the Court excluding the testimony
14  or other evidence offered through such experts that are not
15  disclosed pursuant to this order.

16      6.   The provisions of F. R. Civ. P. 26(b)(4) shall
17  apply to all discovery relating to experts and their opinions.
18  Experts may be fully prepared to be examined on all subjects and
19  opinions included in the designation.  Failure to comply will
20  result in the imposition of sanctions.

21  XI.  Pre-Trial Motion Schedule.

22      1.   The following schedule shall be adopted for cross-
23  motions for summary judgment.  Plaintiffs and Defendants shall
24  file their cross-motions for summary judgment on or before May
25  30, 2006.  Opposition pleadings shall be filed on or before June
26  19, 2006.  Any responses shall be filed by July 3, 2006.  The
27  cross-motions for summary judgment shall be heard on July 17,
28  2006, at 9:00 a.m. in Courtroom 2 before Judge Wanger.

1       **2.**    Following disposition of the cross-motions for summary

2  judgment, a further scheduling conference shall be held to

3  determine the necessity for a trial date.

4  **XII. Settlement Conference.**

5       **1.**    A Settlement Conference is scheduled for October 13,

6  2005, at 9:00 a.m. in Courtroom 6 before the Honorable Lawrence

7  J. O'Neill, United States Magistrate Judge.

8       **2.**    Unless otherwise permitted in advance by the

9  Court, the attorneys who will try the case shall appear at the

10  Settlement Conference with the parties and the person or persons

11  having full authority to negotiate and settle the case on any

12  terms at the conference.

13       **3.**    Permission for a party [not attorney] to attend

14  by telephone may be granted upon request, by letter, with a copy

15  to the other parties, if the party [not attorney] lives and works

16  outside the Eastern District of California, and attendance in

17  person would constitute a hardship.  If telephone attendance is

18  allowed, the party must be immediately available throughout the

19  conference until excused regardless of time zone differences.

20  Any other special arrangements desired in cases where settlement

21  authority rests with a governing body, shall also be proposed in

22  advance by letter copied to all other parties.

23       **4.**    Confidential Settlement Conference Statement.

24  At least five (5) days prior to the Settlement Conference the

25  parties shall submit, directly to the Magistrate Judge's

26  chambers, a confidential settlement conference statement.  The

27  statement should not be filed with the Clerk of the Court nor

28  served on any other party.  Each statement shall be clearly

1   marked "confidential" with the date and time of the Settlement

2   Conference indicated prominently thereon.  Counsel are urged to

3   request the return of their statements if settlement is not

4   achieved and if such a request is not made the Court will dispose

5   of the statement.

6        5.   The Confidential Settlement Conference

7   Statement shall include the following:

8             a.   A brief statement of the facts of the

9   case.

10            b.   A brief statement of the claims and

11  defenses, i.e., statutory or other grounds upon which the claims

12  are founded; a forthright evaluation of the parties' likelihood

13  of prevailing on the claims and defenses; and a description of

14  the major issues in dispute.

15            c.   A summary of the proceedings to date.

16            d.   An estimate of the cost and time to be

17  expended for further discovery, pre-trial and trial.

18            e.   The relief sought.

19            f.   The parties' position on settlement,

20  including present demands and offers and a history of past

21  settlement discussions, offers and demands.

22  XIII.  Request For Bifurcation, Appointment Of Special Master,

23  Or Other Techniques To Shorten Trial.

24       1.   None.

25  XIV. Related Matters Pending.

26       1.   There are no related matters.

27  XV.  Compliance With Federal Procedure.

28       1.   The Court requires compliance with the Federal

1  Rules of Civil Procedure and the Local Rules of Practice for the

2  Eastern District of California.   To aid the court in the

3  efficient administration of this case, all counsel are directed

4  to familiarize themselves with the Federal Rules of Civil

5  Procedure and the Local Rules of Practice of the Eastern District

6  of California, and keep abreast of any amendments thereto.

7  XVI. Effect Of This Order.

8      1.   The foregoing order represents the best

9  estimate of the court and counsel as to the agenda most suitable

10 to bring this case to resolution.   The trial date reserved is

11 specifically reserved for this case.   If the parties determine at

12 any time that the schedule outlined in this order cannot be met,

13 counsel are ordered to notify the court immediately of that fact

14 so that adjustments may be made, either by stipulation or by

15 subsequent scheduling conference.

16     2.   Stipulations extending the deadlines contained

17 herein will not be considered unless they are accompanied by

18 affidavits or declarations, and where appropriate attached

19 exhibits, which establish good cause for granting the relief

20 requested.

21     3.   Failure to comply with this order may result in

22 the imposition of sanctions.

23

24 DATED:   June 23, 2005.

25

26                              /s/ OLIVER W. WANGER

                               _____

27                                  Oliver W. Wanger
                               UNITED STATES DISTRICT JUDGE

28 gill sch con